IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN (Little Rock) DIVISION

DR. JULIUS J. LARRY III, Individually §
And in his Official Capacity as Publisher –
The Little Rock Sun Community        §
Newspaper; ANNIE MABEL ABRAMS;
REVEREND REGINALD J. HAMPTON; §
MARTHA DIXON; DOROTHY
JEFFERSON; SHIRLEY D. LARRY;          §
individually and on behalf
Similarly-situated African Americans   §
Residing in the Southeast Quadrant of
the State of Arkansas

                                      §

PLAINTIFFS,

                                      §

VS.                                   §        CASE NUMBER:  4:18-cv-116-KGB

                                      §

STATE OF ARKANSAS; ASA
HUTCHINSON, in his Official
Capacity as Governor of the State of  §
Arkansas; LESLIE RUTLEDGE, in
her Official Capacity as Attorney     §
General of the State of Arkansas; MARK
MARTIN, in his Official Capacity as   §
Arkansas Secretary of State and the
Arkansas Legislature, in their Official
Capacities                            §

DEFENDANTS.

PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED ORIGINAL
COMPLAINT CHALLENGING THE CONSTITUTIONALITY OF THE
APPORTIONMENT OF CONGRESSIONAL DISTRICTS IN THE STATE OF
ARKANSAS AND FIRST AMENDED ORIGINAL COMPLAINT

1

**TO THE HONORABLE PANEL:**

Come Now, **Dr. Julius J. Larry III**, individually and his official capacity as Publisher of the Little Rock Sun Community Newspaper; **Annie Mabel Abrams**; **Reverend Reginald J. Hampton**; **Martha Dixon;  Dorothy Jefferson; and Shirley Diane Larry,** on behalf of all those similarly situated African Americans and minorities  residing in the South and  Southeast quadrant of the State of Arkansas  and  file this Motion for Leave to file their First Amended Original Complaint pursuant to the Rule 26f Conference schedule and hereby file  their First Amended Original Complaint challenging the constitutionality of the apportionment of congressional districts in the State of Arkansas,   pursuant to 28 U.S. C. § 2284  - to remedy minority vote dilution and racial gerrymandering  of the First Congressional District of Arkansas,  by enforcing Section 2 of the Voting Rights Act of 1965, as amended. They hereby incorporate their Original Complaint and Request for Three Judge Panel by reference as if fully set out herein.  They are   challenging the constitutionality of the apportionment of the congressional districts as presently drawn in Aransas, including the absolute gerrymander of the Second Congressional District.

 Plaintiffs seek declaratory and injunctive relief against the existing congressional district plan as drawn      and      adopted      by      the      Arkansas      Legislature      presently.

 

1. The existing plan denies and abridges Plaintiffs' right to vote because of their race and national original- African American and Hispanic. Defendants drew and adopted the existing plan with the intent and effect of diluting the voting strength of African American and minority voters in Arkansas and denying them an equal opportunity to elect candidates of their choice to the U.S. Congress. In fact, no African American or ethnic minority has ever been elected to the U.S. Congress from the state of Arkansas since Arkansas became a state. This was no accident, but the result of systematic, institutionalized racial gerrymandering over the years. Defendants packed like-minded white voters in the Northeast into the 1st Congressional District and the results are prima facie evidence of a Section 2 violation of the Voting Rights Act of 1965.



2.  Section 2 of the Voting Rights Act prohibits two types of discrimination: **"vote denial"**, in which a person is denied the opportunity to cast a ballot or to have his vote properly counted, and **"vote dilution"**, in which the strength or effectiveness of a person's vote is diminished.  Most Section 2 litigation has concerned vote dilution, especially claims that a jurisdiction's redistricting plan or use of at-large/multimember elections prevents minority voters from casting sufficient votes to elect their preferred candidates.  An at-large election can dilute the votes cast by minority voters by allowing a cohesive majority group to win every legislative seat in the jurisdiction. Redistricting plans can be **gerrymandered** to dilute votes cast by minorities by "packing" high numbers of minority voters into a small number of districts or "cracking" minority groups by placing small numbers.  In the First Congressional District of Arkansas, defendants packed the district with like-minded white voters in the Northeastern half of the district to dilute the Black votes of the residents of the Southeastern half of the gerrymandered district.

**Jurisdiction and Venue**

3.  **A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body. 28 U.S.C §2284.**

**(b)  In any action required to be heard and determined by a district court of three judges under subsection (a) of this section, the composition and procedure of the court shall be as follows:**

**(1)  Upon the filing of a request for three judges, the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. The judges so designated, and the judge to whom the request was presented, shall serve as members of the court to hear and determine the action or proceeding.**

4

**(2) If the action is against a State, or officer or agency thereof, at least five days' notice of hearing of the action shall be given by registered or certified mail to the Governor and attorney general of the State.**

4. Plaintiffs invoked the jurisdiction of this Court pursuant to 28 U. S. C. §§ 1331, 1343(a)(3 ) and (4), and 2201, and 42 U. S. C. §§ 1973j(f), 1983, and 1988.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6. Plaintiffs requested a three-judge court pursuant to 28 U.S.C.§2284, on February 9, 2018.

**Parties - Plaintiffs**

7. The Plaintiffs are each and all residents, citizens and registered voters who voted within Little Rock; Pulaski;  Arkadelphia; Phillips; and Helena, Arkansas.  The race and color of each Plaintiff is African American and Black.

**Parties – Defendants**

8. All defendants herein, by information and belief, are jointly and severally responsible  for the creation, approval and adoption of the 1st Congressional District's racially gerrymandered map which has denied Black and minority voters' in the Southeastern part of the district, their right to elect candidates of their choice to the U.S. Congress. By information and belief, defendant Secretary of State is responsible for all election results in Arkansas. All defendants have been properly and duly served with Summons and Complaint.

**Statement of the Facts**

9. At issue in this litigation is the racially gerrymandered First Congressional District of Arkansas, Second Congressional District and Fourth Congressional District, as drawn by the Arkansas Legislature, based on the 2010 census and approved on April 20, 2011 and became law.

The First Congressional District is composed of the following counties:   Greene; Clay; Randolph; Fulton; Baxter; Izard; Sharp; Lawrence; Craighead; Searcy; Stone; Cleburne; Independence; Jackson; Poinsett; Mississippi; Woodruff; Prairie; Lonoke; Cross; Crittenden; St. Francis; Lee; Monroe; Phillips; Arkansas; Desha; Jefferson; Lincoln and Chicot.

10.   Presently, the First Congressional District covers over one-third of the State of Arkansas - East of the White River, from the Missouri Line to the Louisiana Line, where a majority of the African American population lives in the Southeastern part of the state.   The 1st Congressional District **is unusually large** and suspect.  The Southeast quadrant of Arkansas has a population of African Americans of voting age that is sufficiently large and geographically compact to constitute a majority in a majority-minority statewide district.  The area where this is possible includes the following counties: Union; Ashley; Chicot; Drew; Lincoln; Jefferson; Pulaski; Desha; Arkansas; Phillips; Monroe; Lee; St. Francis; Crittenden; and Cross.

However, experts concluded that no majority-Black district can be drawn in Arkansas.  But, a majority-minority district can be drawn, as shown below.

6



USUALLY DEMOCRATIC DISTRICTS    HIGHLY COMPETITIVE DISTRICTS    USUALLY REPUBLICAN DISTRICT

Majority minority    1                    0                    3

11.    Plaintiffs' alternative redistricting map is the best configuration for effectuating the will of the People of Arkansas, and the least restrictive way to remedy the racial gerrymandering that has been institutionalized in the 1st Congressional District since Arkansas became a state. This new map represents the true diverse interests of each quadrant of the state of Arkansas. This map shows the large contiguous geographically compact area to constitute a majority-minority district in a re-drawn 1st Congressional District consisting of Black, Latinos, Asians and Native Americans. There is political cohesiveness between the minority groups, especially Latinos and Blacks, who generally vote Democratic. Asians in the proposed new congressional district generally vote Democratic.

## Legislative history

12. Section 2 of the **Voting Rights Act of 1965** prohibits any jurisdiction from implementing a "voting qualification or prerequisite to voting, or standard, practice, or procedure ... in a manner which results in a denial or abridgement of the right ... to vote on account of race," color, or

7

language minority status. The Supreme Court has allowed private plaintiffs to sue to enforce this prohibition. In ***City of Mobile v. Bolden*** (1980), the Supreme Court held that as originally enacted in 1965, Section 2 simply restated the Fifteenth Amendment and thus prohibited only those voting laws that were intentionally enacted or maintained for a discriminatory purpose. Senate Judiciary Committee Chairman Strom Thurmond and House Speaker Tip O'Neill responded by passing an amendment to the Civil Rights Act, and President Ronald Reagan signed it into law on June 29, 1982. Congress's amended Section 2 to create a **"results" test**, which prohibits any voting law that has a discriminatory effect, **irrespective of whether the law was intentionally enacted or maintained for a discriminatory purpose.** The 1982 amendments provided that the results test does not guarantee protected minorities a right to proportional representation.

13. When determining whether a jurisdiction's election law violates this general prohibition, courts have relied on factors enumerated in the Senate Judiciary Committee report associated with the 1982 amendments ("Senate Factors"), including:

1. **The history of official discrimination in the jurisdiction that affects the right to vote;**
2. **The degree to which voting in the jurisdiction is racially polarized;**
3. **The extent of the jurisdiction's use of majority vote requirements, unusually large electoral districts, prohibitions on bullet voting, and other devices that tend to enhance the opportunity for voting discrimination;**
4. **Whether minority candidates are denied access to the jurisdiction's candidate slating processes, if any;**
5. **The extent to which the jurisdiction's minorities are discriminated against in socioeconomic areas, such as education, employment, and health;**
6. **Whether overt or subtle racial appeals in campaigns exist;**
7. **The extent to which minority candidates have won elections;**
8. **The degree that elected officials are unresponsive to the concerns of the minority group; and**
9. **Whether the policy justification for the challenged law is tenuous.**

The report indicates not all or a majority of these factors need to exist for an electoral device to result in discrimination, and it also indicates that this list is not exhaustive, allowing courts to consider additional evidence at their discretion.

*In Thornburg v. Gingles*, 478 U.S. 30 (1986), a unanimous United States Supreme Court found that "the legacy of official discrimination ... acted in concert with the multimember districting scheme to impair the ability of ... cohesive groups of Black voters to participate equally in the political process and to elect candidates of their choice." The ruling invalidated districts of the North Carolina General Assembly and led to more single-member districts in state legislatures.

Under the *Gingles* test, Plaintiffs must show the existence of three preconditions:

1. The racial or language minority group "is sufficiently numerous and compact to form a majority in a single-member district";
2. The minority group is "politically cohesive" (meaning its members tend to vote similarly); and
3. The "majority votes sufficiently as a bloc to enable it ... usually to defeat the minority's preferred candidate

The first precondition is known as the "compactness" requirement and concerns whether a majority-minority district can be created. The second and third preconditions are collectively known as the "racially polarized voting" or "racial bloc voting" requirement, and they concern whether the voting patterns of the different racial groups are different from each other. If a plaintiff proves these preconditions exist, then the plaintiff must additionally show, using the remaining Senate Factors and other evidence, that under the "totality of the circumstances", the jurisdiction's redistricting plan or use of at-large or multimember elections diminishes the ability of the minority group to elect candidates of its choice

9

**First Cause of Action**

13. The allegations contained in the preceding paragraphs are realleged as if fully set forth herein.

14. The Arkansas Legislature   adopted the existing Congressional district plan which violates Section 2 of the Voting Rights Act, as amended, 42 U. S. C. § 1973. The existing plan denies and abridges the Plaintiffs' right to vote on account of their race and color, by diluting their voting strength as African Americans and minority citizens in Arkansas, including Hispanics. The plan does not afford Plaintiffs an equal opportunity to participate in the political process and to elect representatives of their choice and denies Plaintiffs the right to vote in elections without discrimination on account of their race and color, in violation of 42 U.S.C. § 1973.


**BASIS FOR EQUITABLE RELIEF**

15.  Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged in this Complaint and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from all of the Defendants' unlawful practices.

16. Plaintiffs will continue to suffer irreparable injury from all of the Defendants' intentional acts, policies, and practices set forth herein unless enjoined by this Court.


**ATTORNEYS FEES**

17.  In accordance with 42 U. S. C. Section 1973-1(e) and 1988, Plaintiffs are entitled to recover reasonable attorney's fees, expenses and costs.

**PRAYER FOR RELIEF**

18.   Plaintiffs respectfully requests the Court to grant the following relief:

a.   A declaratory judgment that the actions of the Defendants in racial gerrymandering in the 1st ; 2nd and 4th Congressional Districts  violate the rights of the Plaintiffs as protected by Section 2 of the Voting Rights Act of 1965, 42 U. S. C. § 1973;

b.   A permanent injunction enjoining and forbidding the use of the state Congressional plan adopted by Defendants in 2011 for the November 2018 congressional elections;

c.   A permanent injunction requiring the Defendants, their successors in office, agents, employees, attorneys, and those persons acting in concert with them or at their discretion, to develop and adopt a redistricting plan for 1st; 2nd;  and 4th Congressional Districts and adjacent districts that do not dilute minority voting strength for the office of U.S. Representative;

e. An order retaining jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court;

f.  An order cancelling the Fall (November 2018) Congressional elections until a new congressional district map is adopted.

f. An order requiring Defendants to pay all of Plaintiffs' costs, including reasonable attorney's fees and expert witness fees; .

g. Such other and further relief as the Court may deem just and proper.

11

Respectfully submitted,

Julius J. Larry III – Pro Se

2615 West 12th Street

Little Rock, Arkansas 72202

832-384-6908

dr.juliusjlarry@yahoo.com

Q. Byrum Hurst, Jr.

Hurst Law

518 Ouachita Avenue

Hot Springs, Arkansas 71901

501-623-2565

qbyrum@hurstlaw.org

Attorney for Rev. R.J. Hampton

Jimmy Morris, Jr.

221 West 2nd Street

Little Rock, Arkansas 72206

501-319-7647

j.c.morrisatty@gmail.com

Additional Counsel for Plaintiffs

12

Gene McKissic

116 West 6th Avenue

Pine Bluff, Arkansas 71601

870-534-6332

countrymack@aol.com

Additional Counsel for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Motion for Leave to File First Amended Original Complaint and Plaintiffs' First Amended Original Complaint, were served on defendants, by and through their attorneys of record, on this 1st day of June, 2018, by certified mail, return receipt requested.


Vincent P. France
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Attorney for State of Arkansas,
Arkansas Legislature, Asa Hutchinson,
And Leslie Rutledge

A.J. Kelly
General Counsel and Deputy
Secretary of State
P.O. Box 251570
Little Rock, AR 72225-1570
Attorney for Secretary of State

Q. Byrum Hurst, Jr.
Hurst Law
518 Ouachita Avenue
Hot Springs, Arkansas 71901
Attorney for Rev. R.J. Hampton

Jimmy Morris, Jr.
221 West 2nd Street
Little Rock, Arkansas 72206
Additional Counsel for Plaintiffs

Gene McKissic
116 West 6th Avenue
Pine Bluff, Arkansas 71601
Additional Counsel for Plaintiffs

Julius J. Larry III