## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**DR. JULIUS J. LARRY, III**                                                                          **PLAINTIFF**

**v.**                                      **Case No. 4:18-cv-00116-KGB**

**STATE OF ARKANSAS,** *et al.*,                                                                  **DEFENDANTS**

### ORDER

Before the Court is plaintiff Dr. Julius J. Larry, III's motion for reconsideration and appointment of a Special Master (Dkt. No. 48). Dr. Larry moves this Court to reconsider its Order dated August 3, 2018, and to appoint a special master for the purpose of defining the boundaries of a new congressional district (*Id.*, at 23). In its August 3, 2018, Order, the Court: (1) denied without prejudice Dr. Larry's motion for leave to file first amended original complaint challenging the constitutionality of the apportionment of Congressional Districts in the state of Arkansas and first amended complaint (the "Proposed First Amended Complaint"); (2) dismissed without prejudice Dr. Larry's remaining vote-dilution claims under § 2 of the Voting Rights Act of 1965, codified at 15 U.S.C. § 10302(b); and (3) dismissed without prejudice Dr. Larry's original complaint (Dkt. No. 46).

In response to Dr. Larry's motion for reconsideration and appointment of a Special Master, defendants State of Arkansas, Asa Hutchinson in his official capacity as Governor of the State of Arkansas, Leslie Rutledge in her official capacity as the Attorney General of the State of Arkansas, Jeremy Gillam in his official capacity as a member of the House of Representatives for the State of Arkansas, and the Arkansas Legislature (collectively, the "State Defendants"), publicly filed "Part I" of their response to Dr. Larry's motion for reconsideration (Dkt. No. 54) and filed a motion to file "Part II" of their response under seal (Dkt. No. 52). The Court granted the State Defendants

permission to file Part II of their response to Dr. Larry's motion for reconsideration and appointment of a Special Master under seal (Dkt. No. 55). In response, Dr. Larry filed a "motion for leave to file response to defendants' response under seal and motion to strike spurious nonresponsive vexatious pleading and motion to unseal record." (Dkt. No. 57). The State Defendants and separate defendant Mark Martin in his official capacity as Arkansas Secretary of State filed responses (Dkt. Nos. 58, 59).

## I.      Legal Standard For Reconsideration

A "motion for reconsideration" is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment. *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008). Rule 59(e) motions serve the limited function of correcting "manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal quotation omitted). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* To prevail on a Rule 59(e) motion that is based on new evidence, the movant must show: "(1) that the evidence was discovered after the court's order, (2) that the movant exercised diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, and (5) that the evidence would probably have produced a different result." *Williams v. Hobbs*, 658 F.3d 842, 854 (8th Cir. 2011) (citation omitted), *cert. denied*, 567 U.S. 966 (2012).

Further, the Eighth Circuit Court of Appeals has counseled courts to review motions to reconsider under Federal Rule of Civil Procedure 60(b). Requests to reconsider nonfinal orders

are more properly viewed as motions for relief from a judgment or order under Rule 60(b). *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999). Rule 60(b) relieves a party from a judgment or order on one of several specified grounds: mistake, inadvertence, surprise, or excusable neglect; newly-discovered evidence that with reasonable diligence could not have been discovered in time for a Rule 59(b) motion; fraud, misrepresentation, or misconduct by an opposing party; the judgment is void; the judgment has been satisfied, released, or discharged; the judgment is based on an earlier judgment that has been reversed or vacated; or applying a judgment prospectively is no longer equitable; and any other reason that justifies relief. Fed. R. Civ. P. 60(b). Rule 60(b) "is not a vehicle for simple reargument on the merits." *Broadway*, 193 F.3d at 990. Because Dr. Larry asserts that this Court's August 3, 2018, Order did not dispose of all claims in this matter, the Court treats Dr. Larry's present motion as a motion under Rule 60(b).

Dr. Larry presents a bevy of arguments in support of his motion for reconsideration, including that: (1) his Proposed First Amended Complaint is not futile; (2) he had the right to amend his original complaint without seeking leave of the Court; (3) new evidence demonstrates that his Proposed First Amended Complaint is not futile; and (4) he has standing to bring his § 2 vote-dilution claims (Dkt. No. 46, at 4-23).

## II.     Analysis Of Motion To Reconsider

### A.     Arguments That Were Or Could Have Been Made In Regard To First Congressional District Claims

Many of Dr. Larry's arguments regarding standing, the futility of his Proposed First Amended Complaint, and whether he had the right to amend his original complaint without seeking leave of the Court could have been—and in some instances were—made to the Court before the Court entered its August 3, 2018, Order (Dkt. No. 46) denying Dr. Larry's motion for leave to file

Proposed First Amended Complaint.  Reargument is not a proper basis for reconsideration under Rule 60(b).

The Court declines to reconsider its prior decisions regarding Dr. Larry's standing to assert claims based on Arkansas's First Congressional District (Dkt. Nos. 30, 46).  The Court also declines to reconsider whether Dr. Larry was required to seek leave of the Court to file his Proposed First Amended Complaint (Dkt. No. 46, at 5).  Further, the Court rejects Dr. Larry's contention that it was improper for the Court to consider futility as a basis on which to deny his request to file his Proposed First Amended Complaint.  Dr. Larry contends that futility is an affirmative defense that defendants had to raise in response to his Proposed First Amended Complaint or waive (Dkt. No. 48, at 5).  He cites no legal authority for this argument, and the Court is aware of none.  *See* Fed. R. Civ. P. 12(b).

The Court, in assessing motions to amend pleadings, is obligated to examine whether granting such an amendment would be a futile act.  *See Humphreys v. Roche Biomedical Lab., Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993); *Weimer v. Amen*, 870 F.2d 1400, 1407 (8th Cir. 1989). To the extent Dr. Larry raises in his motion for reconsideration new arguments based upon what he characterizes as "new evidence" presented with his motion for reconsideration, the Court notes that neither his motion for reconsideration nor the attachments to it amend his operative complaint, the Proposed First Amended Complaint, or any prior filing.  *See Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1050 (8th Cir. 2010) (affirming district court's denial of leave to amend based upon motion to reconsider where the motion "added little, if any, of substance to the original complaint . . . .") (quoting *Dorn v. State Bank of Stella*, 767 F.2d 442, 443-44 (8th Cir. 1985)); *see also Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009) (finding that district court did not abuse its discretion by denying leave to amend where plaintiffs did not describe what changes

4

they would make to their complaint to avoid dismissal).  Further, the Court notes that its prior Order was based upon Dr. Larry's lack of standing and the legal insufficiency of the allegations contained in Dr. Larry's original complaint and Proposed First Amended Complaint; even assuming the "new" evidence could not have been presented to this Court before this Court entered its August 3, 2018, Order and that it would be proper for the Court to evaluate such evidence now, this evidence would not alter this Court's rationale for denying Dr. Larry's motion to amend and dismissing his claims.  The "new" evidence does not cure the deficiencies in Dr. Larry's original complaint or his Proposed First Amended Complaint.[1]  *See Humphreys*, 990 F.2d at 1082 ("It is settled law that district courts may properly deny leave to amend if the proposed changes would not save the complaint.") (citation omitted).

**B.     Arguments In Regard To Purported Claims Based On Other Congressional Districts**

Dr. Larry also argues that the Court improperly dismissed his original complaint without addressing his "Supplemental Request for a Three Judge Panel To Challenge Unconstitutionality of Apportionment of Second Congressional District of Arkansas Pursuant to 28 U.S.C. § 2284" (the "Supplemental Request") (*see* Dkt. No. 23).  Dr. Larry now explains that, by filing this document, which was not styled as a notice of amended complaint or motion to amend, he intended

---

[1]   Additionally, the Court declines to sanction defendants for arguing that Dr. Larry's Proposed Amended Complaint did not comply with the Local Rules of the Eastern and Western Districts of Arkansas.  The Court also declines Dr. Larry's invitation to deem his requests for admission as admitted. *See Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir. 1983) (holding that a district court has the discretion to permit the late filing of an answer to a request for admission).  Here, defendants assert that they did not receive any requests for admission from Dr. Larry prior to the filing of the motion for reconsideration (Dkt. Nos. 51, at 3; 54, at 3-4).  Dr. Larry has put forth no documentary proof that defendants received his requests for admission prior to his filing of the motion for reconsideration.

to amend his original complaint to challenge the alleged dilution and racial-gerrymandering of African American voters in Arkansas's Second Congressional District (Dkt. No. 48, at 16-17).

### 1.    Intent To Amend

As an initial matter, for the following reasons, the Court is skeptical of Dr. Larry's assertion that the Supplemental Request was intended as an amendment to his original complaint. After Dr. Larry filed the Supplemental Request (Dkt. No. 23), the Court entered an Order regarding Dr. Larry's standing to assert an equal protection claim as to Arkansas' First Congressional District (Dkt. No. 30). In that Order, the Court summarized and characterized Dr. Larry's complaint and claims as addressing Arkansas's First Congressional District (Dkt. No. 30, at 4). That Order was entered on April 23, 2018, and it did note that Dr. Larry had filed the Supplemental Request (*Id.*, at 3). At no point from the entry of that Order until his filing on August 13, 2018, did Dr. Larry attempt to clarify with the Court or the opposing parties the claims he contends he intended to bring in his Supplement Request regarding Arkansas's Second Congressional District.

The Supplemental Request does not fully set out an amendment; instead, it purports to incorporate other filings "by reference as if fully set out herein verbatim." (Dkt. No. 23, at 2). Dr. Larry's original complaint complains only of acts taken in regard to Arkansas's First Congressional District (Dkt. No. 1, at 2-3 ("Defendants packed like-minded white voters in the Northeast into the 1st Congressional District and the results are prima facie evidence of a Section 2 violation of the Voting Rights Act of 1965, as amended."), at 4 ("In the First Congressional District of Arkansas, defendants packed the district with like-minded white voters in the Northeastern half of the districts to dilute the Black votes of the residents of the Southeastern half of the gerrymandered district."), at 5 ("All defendants here, by information and belief, are jointly and severally responsible for the creation, approval and adoption of the 1st Congressional District's

racially gerrymandered map which has denied Black voters in the Southeastern part of the district, their right to elect candidates of their choice to the U.S. Congress.  At issue in this litigation is the racially gerrymandered First Congressional District of Arkansas . . . ."), at 26 (requesting a "declaratory judgment that the actions of defendants in racial gerrymandering in the 1st Congressional District of Arkansas violate the rights of the Plaintiffs, as protected by Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.")).  The Supplemental Request does not reference the equal protection clause or § 2 of the Voting Rights Act, although the Court acknowledges it references the purported "unconstitutionality of the apportionment of the Second Congressional District that has diluted the votes of African Americans for years." (Dkt. No. 23, at 2).

Despite claiming now that his Supplemental Request was intended as an amendment, Dr. Larry later filed a different motion titled a "motion for leave to file *first* amended original complaint challenging the constitutionality of the apportionment of congressional districts in the state of Arkansas and *first* amended complaint." (Dkt. No. 36 (emphasis added)).  Before that, Dr. Larry filed a "motion for leave to amend original complaint and obtain class counsel," though that filing did not propose any amendments to Dr. Larry's original complaint (Dkt. No. 16).  Dr. Larry's filings are not a model of clarity.

In his motion for leave to file his Proposed First Amended Complaint, Dr. Larry states that he seeks:

> to remedy minority vote dilution and racial gerrymandering of the First Congressional District of Arkansas, by enforcing Section 2 of the Voting Rights Act of 1965, as amended.  They [plaintiffs] hereby incorporate their Original Complaint and Request for Three Judge Panel by reference as if fully set out herein. They are challenging the constitutionality of the apportionment of the congressional districts as presently drawn in Arkansas, including the absolute gerrymander of the Second Congressional District.

(Dkt. No. 36, at 2).  Later, he states that, "[a]t issue in this litigation is the racially gerrymandered First Congressional District of Arkansas, Second Congressional District and Fourth Congressional District, as drawn by the Arkansas Legislature, based on the 2010 census and approved on April 20, 2011, and became law." (*Id.*, at 5).  However, he proceeds in the next several paragraphs of the Proposed First Amended Complaint to describe Arkansas's First Congressional District only, not the Second Congressional District or Fourth Congressional District (*Id.*, at 5-10).  Then, in his prayer for relief, he seeks in part "[a] declaratory judgment that the actions of the Defendants in racial gerrymandering in the 1st, 2nd and 4th Congressional Districts violate the rights of the Plaintiffs as protected by Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 . . . ." (*Id.*, at 11).

Even in his latest filing, in his affidavit, he describes in pertinent part his complaints as follows:

> . . . I filed this case because of the continuing personal harm to me as a result of the racial gerrymandering and violation of section of the Voting Rights Act as manifested in the 1st Congressional District that adversely affects me in the 2nd Congressional District.
>
> . . .
>
> . . . Immediately, I noticed that the 1st C[ongressional ]D[istrict] was unusually large compared to the 2nd C[ongressional ]D[istrict] where I lived.
>
> . . . Then, I discovered that Jefferson County, with a large population of Blacks, had been fractured, with part of it in the 1st C[ongressional ]D[istrict] and part in the 4th C[ongressional ]D[istrict].  However, if Pulaski County and the whole of Jefferson County were in the same congressional district, minorities would have a better chance of electing a candidate of their choice and I could realize the true meaning of one person one vote by electing the candidate of my choice.
>
> With that goal in mind, I set out to remedy the personal injury to me caused by the problem in the 1st C[ongressional ]D[istrict], minority vote dilution in violation of section 2 of the Voting Rights Act.  Because the AR Legislature put 30 counties in the 1st C[ongressional ]D[istrict], which is almost one-half of the counties in the

8

State, it forced and gerrymandered the 2nd C[ongressional ]D[istrict] with only 8 counties with Pulaski County the only Democratic county . . . .

One person one vote has been taken from me due to the vote dilution problem in C[ongressional ]D[istrict ]1 that has injured me in C[ongressional ]D[istrict ]2, which is adjacent to C[ongressional ]D[istrict ]1 . . . . It is my personal belief that this discrimination in voting in C[ongressional ]D[istrict ]2 and C[ongressional ]D[istrict ]1 are by design and calculated to disenfranchise minorities, including me.

The problem in C[ongressional ]D[istrict ]2 can be fixed by adopting the only majority-minority coalition map that was drawn by experts and presented in this case. By removing Pulaski County from the 2nd C[ongressional ]D[istrict ] and placing Pulaski County with Jefferson County and the rest of the AR Delta and contiguous southern border where minorities live in Arkansas, the disenfranchisement of minorities will end.

Until this remedy is put in place, I will continue to be personally injured by the unconstitutional and unlawful gerrymandering in the 1st C[ongressional ]D[istrict] because the adverse effects and harm caused by are intra-district vote dilution is felt by voters in C[ongressional ]D[istrict ]2 including me . . . .

(Dkt. No. 46, a 44-45). The gravamen of Dr. Larry's claims appears to be the alleged "unconstitutional and unlawful gerrymandering" in Arkansas's First Congressional District that purportedly causes harm in Arkansas's First Congressional District, Second Congressional District, and Fourth Congressional District and therefore requires a redrawing of all three of those districts, according to Dr. Larry. In its prior Orders, the Court analyzed this claim (Dkt. Nos. 30, 46).

If Dr. Larry did intend to amend his original complaint by filing the Supplemental Request, the Court observes that this serves as additional support, along with the reasons previously articulated by the Court (Dkt. No. 46, at 5), for the conclusion that Dr. Larry was not entitled to amend as a matter of right when he filed his later motion for leave to file Proposed First Amended Complaint. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleadings *once* as a matter of course . . . .") (emphasis added).

Despite its skepticism, the Court will proceed to examine the claims Dr. Larry contends he intended to bring by filing his Supplemental Request.

### 2. Request For Default Judgment Against Defendants As To Claims Regarding Arkansas's Second Congressional District

As an initial matter, Dr. Larry seeks default judgment on his claims related to Arkansas's Second Congressional District. Dr. Larry asserts that, because he amended his original complaint with his Supplemental Request, he is entitled to default judgment because defendants failed to answer or otherwise respond timely to his purportedly amended complaint (Dkt. No. 48, at 5-6). At a party's request, a court may enter default judgment against a party who "has failed to plead or otherwise defend . . . ." *Norsyn, Inc. v. Desai*, 351 F.3d 825, 828 (8th Cir. 2003); *see* Fed. R. Civ. P. 55(a)-(b). Default judgment is "only appropriate where there has been a clear record of delay or contumacious conduct." *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1332 (8th Cir. 1988) (quotations and citations omitted). "[E]ntry of default judgment should be a rare judicial act." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (internal citation and quotation omitted).

Even if Dr. Larry's Supplemental Request can be considered an amendment to his original complaint, all defendants did not default, and the Court denies Dr. Larry's request for default judgment. Several defendants responded to the filing timely, requesting that the Court dismiss Dr. Larry's assertions regarding Arkansas's Second Congressional District (Dkt. Nos. 24, 25). If the members of the Arkansas Legislature named as defendants by Dr. Larry had been properly served by the time he filed his Supplemental Request, a point this Court declines to examine or pass on, Dr. Larry contends specifically that they defaulted by not responding to the Supplemental Request. Even if Dr. Larry's characterization of events is correct, "[w]hen co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and

10

the other suffers a default judgment . . . .  To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party." *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citing *Frow v. De La Vega*, 82 U.S. 552 (1872); *Bastien v. R. Rowland & Co.*, 631 F. Supp. 1554, 1561 (E.D. Mo. 1986), *affirmed without opinion* 815 F.2d 713 (8th Cir. 1987)).  The Court will not enter default judgment based on Dr. Larry's Supplemental Request or claims regarding Arkansas's Second Congressional District.

### 3.     Asserting Claims Regarding Arkansas's Second Congressional District

Even if Dr. Larry intended with his Supplemental Request to bring claims based on Arkansas's Second Congressional District, regardless of his standing to bring such claims, Dr. Larry failed to state claims regarding Arkansas's Second Congressional District upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

### a.     Standing

In regard to claims based on Arkansas's Second Congressional District, Dr. Larry states that "the Court has already ruled on the Equal Protection claims pursuant to *Hays* and it is law of the case."  (Dkt. No. 48, at 3).  The Court rejects this contention.  The law-of-the-case doctrine is "a means to prevent the relitigation of a settled issue in a case." *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008).  The doctrine "'requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.'" *Id.* (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)).  The Court's prior Orders addressed only his standing to maintain an equal protection and § 2 vote dilution claim as to Arkansas's First Congressional District (Dkt. Nos. 30, 46).

11

The *Hays* Rule, which this Court explored in its prior Orders, may not apply to Dr. Larry's purported claims regarding Arkansas's Second Congressional District because Dr. Larry represents in his complaint that he resides in Arkansas's Second Congressional District. *See United States v. Hays*, 515 U.S. 737, 746 (1995). The Court makes no ruling on this issue because the Court is not convinced that, even when the Supplemental Request is considered, Dr. Larry's claim is based on defendants' alleged acts anywhere but in the First Congressional District. Based on the Court's review of all of Dr. Larry's filings, the Court finds that the gravamen of his claim is that defendants racially gerrymandered Arkansas's First Congressional District, thereby causing harm in the First Congressional District, Second Congressional District, and Fourth Congressional District. Dr. Larry's allegations focus on defendants' alleged conduct with respect to Arkansas's First Congressional District, where Dr. Larry admittedly does not live or vote. The Court is not persuaded that *Department of Commerce v. United States House of Representatives*, 525 U.S. 316 (1999), which is cited by Dr. Larry in his motion to reconsider, changes this analysis (Dkt. No. 48, at 20-23).

### b. Equal Protection Claim

Regardless of whether Dr. Larry has standing to bring an equal protection claim regarding Arkansas's Second Congressional District, he fails to state such a claim on which relief can be granted. In *Shaw v. Reno,* 509 U.S. 630 (1993), the Supreme Court held that a plaintiff states a claim under the Equal Protection Clause by alleging that a state redistricting plan, on its face, has no rational explanation save as an effort to separate voters on the basis of race. *See Miller v. Johnson*, 515 U.S. 900, 903 (1995). In the Supplemental Request, Dr. Larry incorporated the allegations in the original complaint, challenged "the unconstitutionality of the apportionment of the Second Congressional District," and attached a chart showing the vote totals from the 2010

congressional election (Dkt. No. 23, at 2-3).  As explained, Dr. Larry's original complaint and even his Proposed First Amended Complaint focused on alleged "unconstitutional and unlawful gerrymandering" in Arkansas's First Congressional District, with barely a mention of Arkansas's Second Congressional District.  In his Supplemental Request, however, Dr. Larry alleges that a table of the 2010 congressional election results that is included in the Supplemental Request "shows racial gerrymandering on its face." (Dkt. No. 23, at 2).  Dr. Larry's factual allegations in the Supplemental Request stem from the 2010 election, but, as defendants point out, the Second Congressional District was reapportioned in 2011.  *See* Ark. Code Ann. § 7-2-103.  Dr. Larry's Supplemental Request makes no allegations regarding the 2011 reapportioned Second Congressional District.  Because neither Dr. Larry's factual allegations in the original complaint, the Proposed First Amended Complaint, nor the Supplemental Request relate to the current apportionment of the Second Congressional District, the Court determines, on this basis, that Dr. Larry fails to state an equal protection claim regarding Arkansas's Second Congressional District on which relief can be granted.  The Court therefore dismisses without prejudice this claim, to the extent it has been properly asserted.

### c.      Section 2 Voting Rights Act Claim

Further, without regard to standing, Dr. Larry fails to state a § 2 Voting Rights Act claim as to Arkansas's Second Congressional District upon which relief can be granted.  As to § 2 of the Voting Rights Act, defendants have consistently argued that Dr. Larry's allegations do not state facts sufficient to make out a cognizable § 2 vote dilution claim.  To establish a violation of § 2, Dr. Larry must prove the following three elements, commonly known as the "*Gingles* preconditions": "(1) the racial group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) the racial district is politically cohesive; and (3) the

majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate." *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1018 (8th Cir. 2006) (quoting *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 425 (2006) (internal citation and modifications omitted)). If the three preconditions are satisfied, then the Court turns to consider the totality of the circumstances. *Id.* (citations omitted).

Dr. Larry has not stated facts sufficient to make out a cognizable § 2 vote dilution claim as it relates to Arkansas's Second Congressional District. He makes few, if any, references to Arkansas's Second Congressional District in his complaint or Proposed First Amended Complaint, as explained. Even in his Supplemental Request, Dr. Larry's allegations regarding the Second Congressional District are sparse; he does not attempt to satisfy through his allegations the *Gingles* preconditions as to the Second Congressional District. Further, because neither Dr. Larry's factual allegations in the original complaint, the Proposed First Amended Complaint, nor the Supplemental Request relate to the current apportionment of the Second Congressional District, to the extent Dr. Larry did intend to amend his complaint with the Supplemental Request to assert claims regarding the Second Congressional District, the Court finds he failed to allege a sufficient factual basis to do so. The Court dismisses without prejudice the § 2 Voting Rights Act claims regarding the Second Congressional District for failure to state a claim upon which relief can be granted.

### 4. Asserting Claims Regarding Arkansas's Fourth Congressional District

To the extent Dr. Larry intends to assert that his claims relate to Arkansas's Fourth Congressional District, regardless of whether Dr. Larry has standing to maintain such claims, he fails to state an equal protection claim or a § 2 Voting Rights Act claim regarding Arkansas's Fourth Congressional District upon which relief can be granted. His filings contain insufficient

14

factual allegations regarding Arkansas's Fourth Congressional District to survive defendants' motions to dismiss or this Court's futility analysis.

### III.     Motion To Unseal Record

After the Court granted the State Defendants permission to file Part II of their response to Dr. Larry's motion for reconsideration under seal, Dr. Larry filed a "motion for leave to file response to defendants' response under seal and motion to strike spurious nonresponsive vexatious pleading and motion to unseal record." (Dkt. No. 57). Dr. Larry asks the Court to "unseal the record," "strike defendants' spurious pleadings under seal," "sanction defendants appropriately for failing to investigate whether or not Larry discharged his sentence in TX before lying to this Court," and grant "his Motion for Reconsideration . . . ." (Dkt. No. 57, at 12).

The State Defendants do not object to Dr. Larry's motion to unseal Part II of their response to Dr. Larry's motion to reconsider (Dkt. No. 58, at 1). The State Defendants do, however, object to Dr. Larry's request that the sealed documents be stricken from the record (*Id*.). Specifically, the State Defendants argue that the documents submitted under seal are directly relevant to Dr. Larry's standing in this action (*Id*., at 2). Separate defendant Mr. Martin filed a response to Dr. Larry's latest motion and states that he has no objection "to Plaintiff seeking to unseal records about himself," but Mr. Martin objects to all other relief sought by Dr. Larry (Dkt. No. 59, at 2).

Dr. Larry's latest motion—"motion for leave to file response to defendants' response under seal and motion to strike scurrilous spurious nonresponsive vexations pleading and motion to unseal record"—is also not a model of clarity (Dkt. No. 57). Dr. Larry asks the Court to "unseal the record," but he also asks the Court to "strike defendants' spurious pleading under seal . . . ." (*Id*., at 12). To the extent Dr. Larry has moved to unseal the filing, the Court grants his motion (Dkt. No. 57) and directs that Part II of the State Defendants' response be unsealed (Dkt. No. 56).

Additionally, the Court construes Dr. Larry's motion to strike as a motion under Rule 12(f) of the Federal Rules of Civil Procedure. As it is "understood that [a] district court enjoys liberal discretion" under Rule 12(f), and because motions to strike are "viewed with disfavor and are infrequently granted," the Court denies Dr. Larry's request to strike Part II of the State Defendants' response (Dkt. No. 56). *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citations omitted).

Finally, the Court declines to decide the issues raised by Part II of the State Defendants' response regarding whether Dr. Larry has standing as a registered voter to bring his claims. Both the State Defendants and Dr. Larry have raised complex factual issues regarding Dr. Larry's status as a registered voter in Arkansas. The resolution of these disputed factual issues is not necessary for the Court's determination of this matter. As the Court finds that Dr. Larry's claims must be dismissed on other grounds, the Court declines at this time to wade into the factual dispute surrounding Dr. Larry's voter registration in Arkansas.

### IV.  Conclusion

Accordingly, the Court denies Dr. Larry's motion for reconsideration and appointment of a special master (Dkt. No. 48) and dismisses without prejudice any and all claims made by Dr. Larry in his Supplemental Request for a Three Judge Panel To Challenge Unconstitutionality of Apportionment of Second Congressional District of Arkansas Pursuant to 28 U.S.C. § 2284 (Dkt. No. 23). The Court grants in part and denies in part Dr. Larry's motion for leave to file response to defendants' response under seal and motion to strike scurrilous spurious nonresponsive vexatious pleadings and motion to unseal record (Dkt. No. 57). The Clerk of Court is directed to unseal Part II of the State Defendants' response (Dkt. No. 56). I am authorized to state that Circuit Judge Duane Benton and District Judge Brian S. Miller join in this Order.

16

So ordered this 12th day of October, 2018.

Kristine G. Baker
United States District Judge